John Hugh HENRY and Roselyn Henry
MULLEN *v.* Alta GOODWIN and C. B. ATTAWAY

79-44                                    583 S.W. 2d 29

Opinion delivered June 25, 1979
(Division I)

*Nolan, Alderson & Vickery*,  for appellant.

*J. S. Brooks* and *Spencer & Spencer*,  for appellees.

GEORGE ROSE SMITH, Justice. The appellants, as the surviving children and sole heirs of Lois Thompson Henry, brought this suit to quiet their title to an 87.29-acre tract of land in Union county. The principal defendant is the appellee Alta Goodwin, who conveyed the land to the plaintiffs' mother, Mrs. Henry, in 1973 by a warranty deed and later by what amounted to a correction deed. The chancellor, finding that the effect of the deeds was to create an express trust in favor of Mrs. Goodwin, dismissed the appellants' complaint. For reversal the appellants contend, first, that no trust was created, and second, that Mrs. Goodwin is precluded by estoppel and by the clean hands doctrine from asserting her claim to the land.

In 1973 Mrs. Goodwin, then about 83, learned that she would be eligible for supplemental Social Security income if she got rid of her land and did not have more than $1,500 in cash. She consulted Mrs. C.B. Attaway, who had been a real estate broker for over 30 years. Mrs. Attaway advised Mrs. Goodwin to convey the land to some third person and to have that person deed the land back to Mrs. Goodwin, so that the second deed could be recorded if the grantee predeceased Mrs. Goodwin.

Mrs. Goodwin's niece, Mrs. Henry, agreed to hold the title for Mrs. Goodwin. Mrs. Goodwin executed a warranty deed to Mrs. Henry on November 8, 1973, which was promptly recorded. Mrs. Henry reconveyed the land to Mrs. Goodwin on April 3, 1974, but that deed was not then recorded. Both deeds contained defective descriptions. On July 19, 1974, Mrs. Goodwin executed a second deed to Mrs. Henry, with a correct description. Mrs. Henry did not execute a second deed back to Mrs. Goodwin, but she did give Mrs. Goodwin a letter that said: "Since a more complete description of your land was required I took another Deed from you last Thursday. I will deed it back to you when you have made other arrangements to take care of your medical expenses." Mrs. Goodwin also deposited certain cash in a joint savings account with Mrs. Henry.

It happened that Mrs. Henry, the younger of the two women, died on December 31, 1975. Within the next seven

days Mrs. Goodwin recorded the deed to her from Mrs. Henry and also conveyed the land to Mrs. Attaway, now a co-defendant, who agreed to hold the title for Mrs. Goodwin. One of the appellants, John Hugh Henry, acted as an executor of his mother's estate. He did not then question Mrs. Goodwin's assertion that she owned the land and the savings account. Neither item was listed in the inventory of Mrs. Henry's estate. The money in the account was turned over to Mrs. Goodwin. Later on the appellants apparently changed their minds and brought this suit to recover the land from Mrs. Goodwin.

The chancellor reached the right result, although we do not agree that a valid express trust was created. Equity, however, will impose a constructive trust when a grantee standing in a confidential relation to the grantor orally promises to hold land for the grantor and later refuses to perform his promise. *Walker v. Biddle*, 225 Ark. 654, 284 S.W. 2d 840 (1955). The appellants, as heirs of their mother, paid nothing for the land and so stand in no better position than she would have occupied. *Baker v. Applen*, 181 Ark. 424, 26 S.W. 2d 109 (1930).

"A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise the other's interest in mind." Restatement, Second, Trusts, § 2, Comment b (1957). Here the confidential relation and the other material facts relating to the constructive trust are shown by clear and convincing evidence; indeed, the testimony is virtually undisputed. John Hugh Henry, one of the appellants, testified that for 18 years before his mother's death she and her aunt, Mrs. Goodwin, had been neighbors and visited on a daily basis. "Mrs. Goodwin was there every night to watch television. Mrs. Goodwin would come in during the day. She from time to time would take a meal at our home, and she and mother had a very, very good, close and warm relationship." Mrs. Henry's deed to Mrs. Goodwin and her letter both show that she was holding the title for her aunt. All the necessary elements of a constructive trust are present.

The appellants also contend that since Mrs. Goodwin

apparently misrepresented her position to the Social Security agency, she is precluded by estoppel or the clean hands doctrine from claiming the land. In a similar situation, where the owner of property transfers it upon an intended trust which fails for illegality, "a resulting trust does not arise if the policy against permitting unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction." Restatement, supra, § 422. It is thus a matter of balancing conflicting principles of public policy. Among the factors to be considered are (1) whether the grantor's conduct involves moral turpitude, (2) the extent of the policy making the transaction illegal, (3) whether the enforcement of a trust would tend to prevent the accomplishment of the illegal purpose, (4) whether the transferee was more at fault than the transferor, and (5) whether the transferor was ignorant of the law or of the facts making the trust illegal. *Id.*, Comment *b*.

Here the difficulty is that the appellants, in attacking the validity of the transaction between Mrs. Goodwin and Mrs. Henry, did not develop enough facts to show that the trust in favor of Mrs. Goodwin ought not to arise. The record does not disclose just what the Social Security regulations are. Mrs. Goodwin evidently relied upon the advice given to her by Mrs. Attaway. Mrs. Henry was perfectly willing to participate in the transaction. Mrs. Goodwin testified that she did not tell the Social Security office that she didn't own the land any more. "I just told them that I had made arrangements to not list it." Mrs. Henry apparently took the deed to the Social Security office for its inspection, pursuant to a letter from that office saying that the agency was required "to verify the transfer of this property." Of course, what we say in this opinion is not binding upon the Social Security Administration, which is not a party to the case and may be in a position to recover whatever payments were made to Mrs. Goodwin. We cannot say, however, in balancing the equities, that Mrs. Goodwin's conduct was so reprehensible that she should lose the property which she has apparently occupied as her home since 1913.

Affirmed.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.