Wade LUCAS *v.* Tanya GRANT

CA 97-890                                    962 S.W.2d 388

Court of Appeals of Arkansas
Division IV
Opinion delivered February 25, 1998
[Petition for rehearing denied March 25, 1998.]

*Michael Knollmeyer*, for appellant.

*Lovell & Nalley*, by: *John Doyle Nalley*, for appellee.

JOHN MAUZY PITTMAN, Judge. Wade Lucas has appealed from an order of the Saline County Chancery Court denying his petition to establish a constructive trust or an equitable lien on real property held by the Estate of Myra Lucas. We affirm the chancellor's decision.

Appellant married Myra Lucas in January of 1989, after living with her for approximately eight months. On December 30, 1988, the real property in issue was conveyed by warranty deed to Myra, who gave a mortgage to Superior Federal Bank to secure a

$20,000.00 note of the same date. Myra signed the mortgage as an unmarried person and was the only person to sign the note. On August 17, 1989, Myra signed a quitclaim deed to the same property to herself and appellant as husband and wife. On December 6, 1989, Myra and appellant signed a quitclaim deed of the property to Myra.

Myra died intestate on February 26, 1994, survived by appellant and her two daughters, Linda Brown and Tanya Grant. Myra's estate sought authority from the probate court to sell the decedent's home. Appellant filed a counterclaim, contending that he was the equitable owner of the home and asking the court to impose a constructive or resulting trust or equitable lien. The probate court denied the counterclaim, and on appeal to this court, we held that the probate court lacked jurisdiction to decide the merits of the counterclaim. *See Lucas v. Brown*, No. CA95-634 (November 27, 1996).

On February 28, 1997, appellant filed a petition in the Saline County Chancery Court, asking the court to impose a constructive trust or equitable lien on the property. By agreement, the parties submitted the record from the probate court as the record in this case.

Appellant testified that he had provided $61,000.00 of the house's purchase price, which was $69,000 plus cancellation of a $2,000.00 debt that the sellers owed to Myra. Appellant testified that a portion of the $20,000.00 loan from the bank went toward the purchase price of the house. Appellant stated that he had caused the deed to be placed in Myra's name because he owed the Internal Revenue Service approximately $30,000.00 and because his ex-wife had recently obtained a $15,000.00 judgment against him. He said that he and Myra had a joint checking account, into which both deposited their income. The $300.00 monthly mortgage payments were made from this joint checking account. He stated that he had not intended to give the house to Myra and had caused it to be placed in her name "[b]ecause I didn't want the IRS or my ex-wife to have any part of it." He stated that the house had been placed in his and Myra's names in order to secure

a loan for $5,000.00; he signed the property back to Myra after they obtained the loan.

In his decision, the chancellor found:

> Mr. Lucas deeded the property to his deceased wife on two occasions for the purpose of avoiding a tax lien with the Internal Revenue Service and to avoid paying a judgment to his former wife. This decision is based upon the doctrine of estoppel, because Mr. Lucas knew exactly what he was doing and the ramifications of signing the deed and the doctrine of unclean hands.

On appeal, appellant argues that the chancellor abused his discretion in refusing to impose a constructive or resulting trust or an equitable lien on the property. Appellant contends that he and Myra were in a confidential relationship and, therefore, a presumption arose that appellant intended to purchase the property for his own benefit.

The burden of proof was upon appellant to establish the existence of a trust. *Waller v. Waller*, 15 Ark. App. 336, 693 S.W.2d 61 (1985). A chancellor's decision regarding whether to impose a constructive or resulting trust will not be reversed unless it is clearly erroneous or clearly against the preponderance of the evidence.

A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. *Horton v. Koner*, 12 Ark. App. 38, 671 S.W.2d 235 (1984). Relationships deemed to be confidential are not limited to those involving legal control; they also arise whenever there is a relation of dependence or confidence, especially confidence that springs from affection on one side and a trust in reciprocal affection on the other. *Jones v. Balentine*, 44 Ark. App. 62, 866 S.W.2d 829 (1993). A confidential relationship, however, is not established simply because parties are related or live in the same household. *Wright v. Union Nat'l Bank*, 307 Ark. 301, 819 S.W.2d 698 (1991). There is no set formula by which the existence of a confidential relationship may be determined, for each case is factually different and involves different

individuals. *Donaldson v. Johnson*, 235 Ark. 348, 359 S.W.2d 810 (1962). Whether two individuals have a confidential relationship is a question of fact. *See Savage v. McCain*, 21 Ark. App. 50, 728 S.W.2d 203 (1987). On this record, we cannot say that the chancellor erred in failing to find that appellant had a confidential relationship with Myra.

■ In *Henry v. Goodwin*, 266 Ark. 95, 583 S.W.2d 29 (1979), the supreme court recognized that to determine whether to impose a constructive trust conflicting principles of public policy must be balanced:

> The appellants also contend that since Mrs. Goodwin apparently misrepresented her position to the Social Security agency, she is precluded by estoppel or the clean hands doctrine from claiming the land. In a similar situation, where the owner of property transfers it upon an intended trust which fails for illegality, "a resulting trust does not arise if the policy against permitting unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction." Restatement, [(Second) of Trusts] § 422. It is thus a matter of balancing conflicting principles of public policy. Among the factors to be considered are (1) whether the grantor's conduct involves moral turpitude, (2) the extent of the policy making the transaction illegal, (3) whether the enforcement of a trust would tend to prevent the accomplishment of the illegal purpose, (4) whether the transferee was more at fault than the transferor, and (5) whether the transferor was ignorant of the law or of the facts making the trust illegal. *Id.*, Comment *b*.

266 Ark. at 98–99, 583 S.W.2d at 31.

■ It has long been recognized that the clean-hands maxim bars relief to those guilty of improper conduct in the matter to which they seek relief. The purpose of invoking the clean-hands doctrine is to protect the interest of the public on the grounds of public policy and to protect the integrity of the court. *Id.* It is within the chancellor's discretion to determine whether the interests of equity and justice require application of the doctrine. *Id.*; *Reid v. Reid*, 57 Ark. App. 289, 944 S.W.2d 559 (1997); *Laroe v. Laroe*, 48 Ark. App. 192, 893 S.W.2d 344 (1995).

We cannot say the chancellor erred in applying the clean-hands doctrine in the case at bar. Appellant freely admitted at trial that the conveyance of the property to Myra was his idea, and we note that appellant saw to it that a deed to the property was placed in Myra's name on two occasions. Additionally, Myra signed a note for $20,000.00 and a mortgage securing the same in her own name. Money from the parties' joint checking account, into which both parties deposited their income, paid this note. Appellant admits that he was simply attempting to avoid a tax lien and the enforcement of a judgment by his ex-wife. At trial, appellant testified that he had not yet paid either debt. Certainly, there is no dispute that appellant was guilty of improper conduct and that his actions have been unconscientious and unjust in this matter. Obviously, the chancellor believed that, in this case, the policy against permitting possible unjust enrichment of the estate was outweighed by the policy against giving relief to a person who has entered a transaction for an improper purpose. *See Henry v. Goodwin, supra.* As the chancellor was in the better position to determine the facts and weigh the competing interests in this case, we cannot say that he abused his discretion in applying the clean-hands doctrine against appellant.

Finally, appellant argues that the probate judge erred in failing to admit parol evidence concerning Myra's and appellant's intent. Although appellant testified at length about his intent in having the deed placed in Myra's name, the chancellor refused on the ground of hearsay to consider appellant's or Ohma Adair's testimony about Myra's statements regarding the house. It is true that parol evidence of an oral promise is admissible to establish the existence of a constructive trust. *Bramlett v. Selman, supra.* Nevertheless, even if the chancellor had admitted this testimony, we could not say that the outcome would have been different, because the chancellor was not required to believe appellant or Ms. Adair. Further, even if taken as true, these statements are not germane to the question of whether the chancellor acted appropriately in applying the clean-hands doctrine. Error is no longer presumed to be prejudicial; unless the appellant demonstrates prejudice, we do not reverse. *Abernathy v. Weldon, Williams, & Lick,*

*Inc.*, 54 Ark. App. 108, 923 S.W.2d 893 (1996); *Jones v. Jones*, 43 Ark. App. 7, 858 S.W.2d 130 (1993).

Affirmed.

JENNINGS and STROUD, JJ., agree.