Missouri Pacific Railroad Company *v.* Sale.

4-5416                                               127 S. W. 2d 133

Opinion delivered March 27, 1939.

*Daggett & Daggett,* for appellant.

*J. Ford Smith* and *W. J. Dungan,* for appellee.

McHaney, J. Appellees brought this action at law, in unlawful detainer, against one Henry Strange ·to recover the possession of a tract of land, described in the complaint as: ''The place known as the Holt Bend Place, being all of the fractional section 12, township 9 north, range 4 west, in Woodruff county, Arkansas.'' They alleged that they were the owners thereof with all improvements, and had rented same to Strange as tenant; that the tenancy terminated December 31, 1933; and that although written demand for possession had been made according to law, he refused to surrender same. Strange

answered, denying that appellees had title to said lands, and alleged title in appellant, who, by leave of court, intervened in said action claiming title thereto by virtue of a patent from the United States, dated October 17, 1934, being No. 172763. The case was transferred to the chancery court. Appellees answered the intervention and pleaded adverse possession for more than seven years, since March 18, 1929, and payment of taxes in bar of appellant's right of recovery.

Trial resulted in a decree dismissing appellant's intervention for want of equity, from which is this appeal.

The facts are undisputed and are as follows: On September 28, 1850, Congress passed an act entitled "An act to enable the State of Arkansas and other states to reclaim the 'Swamp Lands' within their limits," which made a grant to the state of all the "Swamp and Over-flowed Lands" remaining unsold at the date of the passage of said act. Pursuant to the request of the Governor of Arkansas, of October 20, 1853, and in accordance with said act, a patent dated August 26, 1859, was issued to the State of Arkansas by the President and the Recorder of the General Land Office to "The whole of fractional section twelve east of White River in township nine (9) north of the Base Line, in range four (4) west of the Fifth Principal Meridian in Arkansas, according to the official plats of survey of the said lands, returned to the General Land Office by the Surveyor General . . ." This tract of land, according to the plat of the original government survey of 1845 contained 97.81 acres, divided into three tracts containing 44.87 acres, 50.39 acres and 2.55 acres, which plat is on file in the land office of this state. Although said patent was dated August 26, 1859, title to the land passed to the state in *praesenti* as of the date of the Act of September 28, 1850. In *Rogers Loco-motive Mach. Works* v. *American Emigrant Co.,* 164 U. S. 559, 17 S. Ct. 188, 41 L. Ed. 552, it was said: "While, therefore, as held in many cases, the Act of 1850 was in *praesenti,* and gave an inchoate title, the lands needed to be identified as lands that passed under the Act, which

being done, and not before, the title became perfect as of the date of the granting Act.''

So it will be seen that the title of the Government to the whole of fractional section 12 east of White River in township 9 north, range 4 west, as surveyed and platted, passed to the State of Arkansas by the patent of August 26, 1859, and related back to the date of the ''Swamp Land Grant,'' September 28, 1850.

Title of the state passed from it in two conveyances, one to H. P. Clingman in 1856 to the southwest quarter thereof and the other to John S. Lowery in 1854 to the southeast quarter thereof and through mesne conveyances to appellees, to them by a commissioner's deed in foreclosure proceedings against J. H. Holt.

In 1929, the commissioner of the general land office caused these and other lands to be resurveyed and the plat of such resurvey was accepted June 18, 1931. This new survey platted said fractional section 12 east of White River into four lots as follows: Lot 1, 22.61 acres; lot 2, 46.75 acres; lot 3, 51.64 acres, and lot 4, 38.97 acres, making a total acreage of 159.97, instead of 97.81 acres as shown by the plat of the original survey, or a difference of 62.16 acres. This increase in acreage over the original survey may be accounted for in part at least to error in the original, or to a moving of the left bank meander line of White River further east on the east side of the tract, which fact is shown by the re-survey.

On July 27, 1932, appellant, as successor to the Cairo & Fulton Railroad Company, filed its primary limits list with the general land office under the acts of Congress of February 9, 1853 (10 Stat. 155) and July 28, 1866 (14 Stat. 338), claiming the right to a patent to said lots 1, 2, 3, 4, section 12, in the bend of White River, and other lots, as shown by the plat of the re-survey, accepted June 18, 1931. On May 22, 1934, appellees filed a protest against said list and claimed title to lots 1, 2, 3 and 4 of said section 12 under the old description, and erroneously stated that the U. S. Government had issued patents to Clingman and Lowery, whereas the patent therefor was issued to the state and from the state to said Clingman and Lowery. They asserted that the land

claimed by them was the identical land covered by the lot description in said re-survey. The acting assistant commissioner overruled the protest of appellees and dismissed same, subject to the right of appeal within thirty days, but no appeal was taken. In doing so, he said: "Pursuant to an examination in the field this land was held to have been erroneously omitted from the original survey of the township as shown on the official plat approved January 20, 1845. A dependent re-survey and extension survey of the omitted land was made in November, 1929, and plat thereof was approved on April 8, 1931, and accepted June 18, 1931." Again he said: "Said lots 1, 2, 3, 4, section 12, are in a bend of the White River. The land in this bend was, in accordance with the said plat of 1845, known as fractional section 12, east of White River. Fractional section 12, east of White River, 97.81 acres, being three lots east of White River, was approved to the state on July 28, 1853, in a state swamp selection under the act of September 28, 1850 (9 Stat. 519) pursuant to which patent No. 7 issued on August 26, 1859. Lots 1, 2, 3, 4, said section 12, on the plat of April 8, 1931, is in the said bend of the river and contiguous to fractional section 12, east of White River, according to the said plat of 1845. No such land as that described by the protestant as patented to Lowery and Clingman could be either identical with or contiguous to any part of fractional section 12, east of White River, 97.81 acres."

There cannot be any doubt that the land known as fractional section 12, east of White River, as surveyed and platted in 1845, is in the same bend in White River and is the same land re-surveyed in 1929 and platted April 8, 1931, except the additional acreage surveyed in the latter survey. In other words, the plat of 1931 covers all the land on the plat of 1845 and 62.16 acres more, caused either or both by an error in the survey of 1845 or by accretions to the land surveyed and platted in 1845. In either case the Government had no right to make the re-survey of 1929 as reflected by the plat of 1931. It was without the power thus to disturb vested rights of *bona fide* owners. A clause in the act of March 3, 1909 (35 Stat. 845), as amended by joint resolution

approved June 25, 1910 (36 Stat. 884), reads: "That no such resurvey or retracement shall be so executed as to impair the *bona fide* rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement." Similar protection is given to the rights of claimants under the provisions of the act of September 21, 1918 (40 Stat. 965). If these statutes do not prohibit the very thing done in this case, then they are meaningless. By this resurvey and the action of the general land office pursuant thereto, land, the title to which had been out of the Government since 1850 and in the state and her grantees since that time, is attempted to be swallowed up by an illegal survey and conveyed to appellant. No such power was given the general land office and none could be given. In the early case of *Rector* v. *Gaines,* 19 Ark. 70, it was held, to quote a headnote, that: "A sale of the public lands, by the executive of the federal government, before the public surveys, may be treated as void: But if the public survey be regularly made, returned and approved, a sale would be valid, although the survey be defective or erroneous, if such defect does not render the identity of the tract uncertain as to locality or quantity." In *State of New Mexico* v. *State of Colorado,* 267 U. S. 30, 69 L. Ed. 499, 45 S. Ct. 202, the Supreme Court of the United States held, that after the land department has surveyed and disposed of public lands, rights therein acquired are not affected by corrective surveys subsequently made by the department. It has been held that the courts may correct original United States surveys that have been upheld by the land department and overthrow the credit due as established by field notes, where the evidence is clear and convincing. *Blair* v. *Brown,* 17 Wash. 570, 50 P. 483. We are not unmindful of such cases as *Chapman & Dewey Lumber Co.* v. *St. Francis Levee Dist.,* 232 U. S. 186, 58 L. Ed. 564, 34 S. Ct. 297, and *Lee Wilson & Co.* v. *U. S.,* 245 U. S. 24, 62 L. Ed. 128, 38 S. Ct. 21, holding to the effect that where, through fraud or error, land is excluded from a survey of public land by a meander line, the land department, on discovering the mistake, may deal with the excluded area, cause it to be resurveyed and

dispose of it. No such situation exists in the case at bar. The resurvey here involved is a resurvey of land already surveyed and sold according to the plat of that survey which covers the whole of fractional section 12 east of White River. It purports to cover all of said fractional section. No part of it is omitted from the original survey. The increased acreage shown by the resurvey, if due either to error or accretions, could not justify a resurvey and destroy vested rights of more than three quarters of a century.

For these reasons the resurvey was without authority of law and the decision of the acting assistant commissioner was, therefore, without binding effect, since there was no jurisdiction in him or his office to determine the questions presented.

The decree of the court dismissing appellant's intervention for want of equity is affirmed.