MACHEN FORD-LINCOLN-MERCURY, INC. *v.*
Barbara MICHAELIS

84-172                                    681 S.W.2d 326

Supreme Court of Arkansas
Opinion delivered December 17, 1984
[Rehearing denied February 11, 1985.]

*W. Frank Morledge, P.A.,* for appellant.

*Killough & Ford,* by: *Robert M. Ford,* for appellee.

P.A. HOLLINGSWORTH, Justice. On December 11, 1981, the appellee, Barbara Michaelis, issued a check for $19.56 to appellant, Machen Ford-Lincoln-Mercury, Inc., for repairs to her 1981 Ford Escort automobile. After driving the automobile for several miles, the same problem appellee had paid to have corrected reoccurred. She immediately returned to the Ford dealer and talked to the service manager, Don Smith, about the problem. The two of them were unable to reach a resolution on how the repairs were to be made. Before her check reached her bank, appellee stopped payment on the check because she contends the appellant did not perform the repairs to her automobile. It is undisputed at the time the stop payment was directed the appellee had $315 in her checking account.

When the check was returned to appellant Machen Ford by the bank, an agent of the appellant signed an affidavit alleging that appellee had violated the Arkansas hot check law Ark. Stat. Ann. § 67-720 (Supp. 1983), a misdemeanor under the facts of the case. A warrant was issued. When the case was presented for trial in the municipal court, appellee's motion to dismiss the charge was granted.

In April 1982, the appellee brought this suit against the appellant automobile agency for malicious prosecution. The appellee pleaded mistake as a defense in that the Municipal Clerk did not understand that there was a stop payment on the check rather than an account with insufficient funds. After a jury trial, the appellee was awarded $20,000 in compensatory damages. It is from that decision that this appeal is brought. This case is before us under Sup. Ct. R. 29 (1)(o) as it presents a question in the law of torts. We affirm.

The only issue raised in this appeal is the failure of the trial judge to give the appellant's requested jury instruction number one. That instruction is worded as follows:

> If you find from a preponderance of the evidence that a representative of Machen Ford-Lincoln-Mercury, Inc., disclosed in good faith to a public officer all facts within its knowledge having a material bearing on the question of the guilt of persons suspected and left it to the office to act on his judgment as a public officer, whether there shall be a prosecution, it is not liable in an action for malicious prosecution by reason of the erroneous conclusion of the office that the facts warrant him in instituting a criminal prosecution.

The facts are that Doris Hartman, an employee of appellant, signed an affidavit stating: "I swear that Barbara Michaelis . . .did. . .commit the offense of violation of Arkansas Hot Check Law by tendering to Machen Ford a check in the sum of $19.56 for merchandise, money, or services." Municipal Judge John Bridg-

forth signed the warrant for her arrest. It was established that the Municipal Judge's policy was not to allow charges to be dropped or dismissed once affidavits and warrants had been issued. It was also established that a "Notice of Payment Stopped Check" was sent to Barbara Michaelis threatening criminal prosecution if the check was not honored.

The appellant argues that since a layman is not charged with knowing the law, he cannot be held responsible for a mistake of law if he truthfully states the facts to a public officer. The .question then according to the appellant, is whether there is sufficient proof that such a disclosure was made. The appellant maintains that the proof was that the appellant disclosed the fact that payment had been stopped on the check by supplying the check itself and by submitting the notice form on which "payment stopped" appeared. This proof was sufficient to have allowed the disclosure question to be submitted to the jury in the form of a jury instruction, according to the appellant.

We have held that "[t]he law is well settled that, where one lays all the facts in his possession before the public prosecutor, or before counsel learned in the law, and acts upon the advice of such counsel in instituting a prosecution, this is conclusive of the existence of probable cause, and is a complete defense in an action for malicious prosecution." *L.B. Price Mercantile Co.* v. *Cuilla,* 100 Ark. 316, 141 S.W. 194, (1911). In *Cuilla,* the evidence showed that the complainant went before a deputy prosecuting attorney before he filed suit and acted upon his advice in deciding to sue. Similarly, in *Laster* v. *Bragg,* 107 Ark. 74, 153 S.W. 1116 (1913), the complainant consulted a judge who sent him to a prosecuting attorney before he filed suit. The complainant then acted upon the advice he was given. *See also Malvern Brick & Tile Co.* v. *Hill,* 232 Ark. 1000, 342 S.W.2d 305 (1961), where an attorney was consulted before charges were filed. The rationale for this rule was explained in *Kansas & Texas Coal Co.* v. *Galloway,* 71 Ark. 351, 74 S.W. 521 (1903), where we said:

It may perhaps turn out that the complainant, instead of relying upon his own judgment, has taken the advice of counsel learned in the law, and acted upon that. This should be safer and more reliable than his own judgment, not only because it is the advice of one who can view the facts calmly and dispassionately, but because he is capable of judging of the facts in their legal bearings. A prudent and cautious man is therefore expected to take such advice; and when he does so, and places all the facts before his counsel, and acts upon his opinion, proof of the fact makes out a case of probable cause, provided the disclosure appears to have been full and fair, and not to have withheld any of the material facts.

That a prosecution was begun or a civil suit instituted under advice of counsel is frequently referred to as a complete defense to an action for malicious prosecution. This rule has been held to apply, although the facts stated to counsel did not warrant the advice given, or though the facts did not, in law, constitute a crime, or however mistaken or erroneous were the opinion expressed by the counsel and the course advised. (citation omitted).

In this case, the general rule does not apply because the appellant company did not consult either an attorney or a prosecutor before filing charges. In *Kable* v. *Carey*, 135 Ark. 137, 204 S.W. 748 (1918), we held that it was not a defense to a suit for malicious prosecution when the complainants claim they relied in good faith upon the advice of a justice of the peace after making a full and fair disclosure of the facts to him. In that opinion we reiterated the general rule, *supra*, and explained that because a justice of the peace is not necessarily a lawyer and has no duty to advise prospective litigants, "[t]hey are not usually learned in the law and on that account can not be safe advisers on important legal questions." The same rationale applies to municipal court clerks. We feel where it is shown that the officer is not expected to exercise his judgment and responsibility as a public officer, the defendant is responsible for the officer's subsequent acts.

The facts here indicate that once the agent swore to a statement that the appellee had violated the hot check law, the warrant was issued to be signed by the judge. It was well established that the policy of the court was not to recall or dismiss charges once warrants were issued. There is a valid public policy reason for this as the municipal court is not to serve as a collection agency for private merchants. The fact that the judge signed the warrant should not be a defense since the policy of the law forbids a magistrate to act as an attorney, or give advice in regard to a prosecution intended to be instituted before him. This is the general rule in this country. 52 Am Jur 2d *Malicious Prosecution* § 89 p. 243-44 (1970).

Under the facts of this case, we hold that in an action for malicious prosecution, the defendant cannot justify his action in instituting the prosecution by pleading that he relied in good faith on the advice of a clerk of court and judge.

It was not error to refuse to give the instruction.

Affirmed.

SMITH, GEORGE ROSE and PURTLE, JJ., dissent.

GEORGE ROSE SMITH, Justice, dissenting. The majority states the facts fairly, but I do not agree with the conclusion that is reached in the case.

The opinion rests essentially on our holding in *Kable* v. *Carey,* a 1918 case, and on a sentence in American Jurisprudence, both cited to support the view that the appellant had no right to rely on a municipal court clerk for legal advice. In *Kable* we said: "A complainant may know the facts but not the law. Therefore he may obtain advice upon the latter from one learned in the law *and be protected though a mistake be made by the legal adviser.*" (My italics.) We pointed out that Kable was not protected in relying upon the advice of a justice of the peace, because justices of the peace "are not usually learned in the law and on that account can not be safe advisers on

important legal questions." The American Jurisprudence citation echoes that view, stating that a complainant cannot "rely on the advice of a justice of the peace or magistrate, who is not usually learned in the law." Only two cases are cited to support that statement. One is the *Kable* case. The other is a similar holding in *Finn* v. *Frink*, 84 Me. 261, 24 Atl. 851 (1892), where the complainant relied on the advice of a "trial justice," but the Maine court said: "We know that trial justices are not learned in the law, nor safe advisers on important legal questions." That is the identical phrase used in *Kable*.

Under our Criminal Procedure Rule 7.1 (b) an arrest warrant may be issued by a judicial officer if "from affidavit . . . it appears there is reasonable cause to believe an offense has been committed." "Judicial officer" is defined in Rule 1.6 (c). Forrest City, where the warrant was issued, had a population of 13,803 in 1980. Its municipal judge, therefore, is required to be "learned in the law, . . . an attorney at law. in good standing. and shall have practiced law at least six years." Ark. Stat. Ann. § 22-704 (Repl. 1962). This warrant was issued by Judge John D. Bridgforth, whom we know from our own records to be a practicing lawyer admitted to the bar in 1967.

The majority opinion says that the appellant should have taken the $19.56 check, on which payment had been stopped, to a lawyer or the prosecuting attorney. A lawyer would probably charge more than the amount of the check for 15 minutes of his time. Prosecutors do not file informations in trivial cases. The appellant's employee, Doris Hartman, went exactly where she was entitled to go, to the municipal clerk's office. The clerk testified that her office handles 1,500 to 2,000 bad checks a year and that as many as 50 warrants, accompanied by copies of the checks, might be on Judge Bridgforth's desk at one time, awaiting his signature.

The clerk attempted to assume full responsibility for the error. She knew that stopping payment on a check is not a criminal offense but a civil matter. She said it was the practice of the office not to process stopped-payment

checks. She or someone in her office saw the check and made a copy of it. The check was stamped with the words PAYMENT STOPPED diagonally across its face, in large letters. She said a mistake was made. She supplied and filled out the printed form of affidavit stating that the appellee had violated the Hot Check Law. She notarized it. All Ms. Hartman did was to give correct information, produce the original check, and sign the affidavit.

All the foregoing facts were properly placed before the jury by the appellant. They were, however, to no avail, because the trial court refused to submit the appellant's defense in a requested instruction which I regard as a correct statement of the law. This is not a case in which the complainant relied on someone not learned in the law. Judge Bridgforth is learned in the law. A mistake was made by him, by his employee on whom he relied, or by both. We said in *Kable* that the complainant is protected "though a mistake be made by the legal adviser." Here the appellant is subjected to a $20,000 judgment without its defense even having been considered by the jury. It seems to me to be a miscarriage of justice, to be corrected by a new trial before a properly instructed jury.

PURTLE, J., joins in this dissent.