Terry Wayne SWANIGAN *v.* STATE of Arkansas

CR 93-1127 · 870 S.W.2d 712

Supreme Court of Arkansas
Opinion delivered February 21, 1994

*William R. Simpson, Jr.*, Public Defender, by: *Sandra S. Cordi*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Terry Wayne Swanigan, raises a single point on appeal from his criminal conviction of the offense of first-degree murder and his sentence of life imprisonment, contending that the trial court erred in failing to exclude the testimony of a witness for violation of Ark. R. Evid. 615. His argument has no merit, and the judgment of the trial court is affirmed.

Swanigan was charged with capital murder in the December 1992 shooting death of Lewis Allen, a fourteen-year-old. The State waived the death penalty, and, following a jury trial, Swanigan was found guilty of first-degree murder and was sentenced to life imprisonment.

Evidence presented at trial indicated that, before the murder, Swanigan and the victim, Allen, encountered each other on a street near The Meat Store, a Little Rock butcher shop and grocery store. According to Tim Henderson, a friend who was walking with Allen and Andre Williams, another youth, to the store, the trio saw Swanigan talking to someone in a truck. He pulled off his jacket and walked toward them as if he wanted to fight.

When Swanigan approached the three youths, witness Henderson testified, Allen put his hand in his coat, as if he had a gun (although the witness claimed never to have seen one), and said to Swanigan, "I don't think that you want to step." Another witness, Everett Lauderdale, testified that after the confrontation, Swanigan went to his house, which was near The Meat Store.

Meanwhile, Allen, Henderson, and Williams entered the shop. They were soon followed by Swanigan, carrying a pistol, which, according to Henderson, Swanigan pointed in Allen's face, saying, "What's up, n_____? What's up now? Where your gun at now?" According to another witness, Cody Nelson, an employee of The Meat Store, a struggle ensued over the gun. At that point, Nelson testified, he heard Swanigan say to Allen, "Punk, I'll kill your m_____-f_____ ass." In the scuffle, Allen fell backwards, and Swanigan fired at him. Witness Henderson stated that three shots were fired in the store and that Allen attempted to escape through the front door. He collapsed on a sidewalk outside and died from a gunshot wound in the chest.

### I. Violation of Ark. R. Evid. 615

On appeal from his first-degree murder conviction, Swanigan argues that the trial court committed reversible error in denying the defense motion to strike the testimony of prosecution witness Cody Nelson for violation of Ark. R. Evid. 615, the witness-exclusion rule. That rule provides, in relevant part: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion."

During cross-examination of witness Nelson, who was working in The Meat Store at the time of the shooting, defense counsel inquired about the presence of other people near the meat counter:

Q   Were there other people working back there?

A   Yeah.

Q   Who was?

A   Antoine Young.

Q   Antoine Young. Is there anyone else working back there?

A   No.

Q   All right. Didn't you have a customer there?

A   Yeah.

Q Okay.

A That's not— He said this, that's what I heard, but I'm not sure.

Q Okay. So you—

A He told me he had a customer, but I wasn't—

Q When did he tell you that?

A He told me— Well, he told me today.

Q Today?

A Yes.

Q When were y'all discussing the testimony about this?

A It was probably when we went to lunch.

Q When you went to lunch? Okay.

At that, the defense attorney requested permission to approach the bench, and the following discussion occurred:

> MR. SALLINGS: Your Honor, the Court instructed the witnesses this morning not to discuss the case or the testimony, and I would move to strike this witness' testimony based on discussing it with other witnesses back in the Witness Room against the Court's order.

> THE COURT: Has there been any change in the testimony? Has there been any prejudice in this regard?

> MR. SALLINGS: I believe there's already evidence that he's testified to some things that he— not necessarily what he knew, but what someone told him back there.

> THE COURT: Counsel, that'll be denied. As for striking the testimony, as for a petition for a continuance, if you want to file that later, we'll consider that, but your Motion to Strike his testimony is going to be denied.

Although Antoine Young had apparently been subpoenaed as a potential witness, he was never called to testify.

■ This court had the occasion, in *Blaylock* v. *Strecker*,

291 Ark. 340, 724 S.W.2d 470 (1987), to examine Ark. R. Evid. 615 and to address its operation and application exhaustively. There we held that a trial court has very narrow discretion to exclude the testimony of a witness for noncompliance with an exclusion order pursuant to Rule 615. A trial judge can exercise that narrow discretion to exclude a witness's testimony only when the noncompliance is had with the consent, connivance, or procurement of a party or his attorney. *Id.* The violation by a witness of the rule of sequestration through no fault of, or complicity with, the party calling him, should go to the credibility rather than to the competency of the witness. *Id.*

In the *Blaylock* opinion, we cited *Norris v. State*, 259 Ark. 755, 536 S.W.2d 298 (1976), and *Williams v. State*, 258 Ark. 207, 523 S.W.2d 377 (1975), for the controlling rationale regarding the rarely exercised discretion to exclude testimony for noncompliance with Rule 615. We stated that, with the offending witness subject to punishment for contempt and the adverse party free to raise the issue of credibility in argument to the jury, the party who is innocent of the rule's violation should not ordinarily be deprived of the testimony.

The standard of narrow discretion, we noted in *Blaylock v. Strecker*, "remains as it has been for many years." 291 Ark. at 345, 724 S.W.2d at 473. We have not changed our stance in subsequent decisions, nor do we see any reason to change it now. *See Porter v. State*, 308 Ark. 137, 823 S.W.2d 846 (1992); *Ford v. State*, 296 Ark. 8, 753 S.W.2d 258 (1988); *Daniels v. State*, 293 Ark. 422, 739 S.W.2d 135 (1987).

██ There are three possible methods of enforcement of an exclusion order that are available to a trial judge: (1) citing the witness for contempt; (2) permitting comment on the witness's noncompliance in order to reflect on his credibility; and (3) refusing to let the witness testify. *Blaylock v. Strecker, supra.* In the following portion of cross-examination, which occurred directly after the trial court refused to strike witness Nelson's testimony, defense counsel pursued the possibility of further noncompliance with the rule and raised the issue of credibility:

Q   Okay. Who else did you talk with about your testimony at lunch?

A   Nobody.

Q   Nobody else? Anything that you've testified to on direct examination that maybe you didn't really remember, but someone told you since the date this happened?

A   No. No.

Q   Okay. So, you don't remember if there was another person there at the counter or not?

A   No.

Defense counsel was not only able to comment, in the course of his questioning, about the reliability of witness Nelson's testimony, but he was also able to establish the fact that the witness did not remember whether another person was present at the meat counter. This court has held that even when there has been a clear violation of Rule 615, the trial court does not abuse its discretion in permitting the witness's testimony when exercising its option of allowing comment on the witness's violation in order to reflect on his credibility. *See Graham* v. *State*, 296 Ark. 400, 757 S.W.2d 538 (1988). Indeed, the trial court's discretion is more readily abused by excluding the testimony than by admitting it. *Ford* v. *State, supra.*

Clearly, witness Nelson's violation of the rule was not accomplished through the consent, connivance, or procurement of the State. His testimony regarding his noncompliance was elicited on cross-examination by the defense attorney, who immediately, upon the court's refusal of his motion to strike, repaired whatever damage may have been done by inquiring about other aspects of testimony that witness Nelson "didn't really remember" and by securing the witness's acknowledgment that he didn't remember if another person was standing by the meat counter. (Subsequently, the defense counsel devoted considerable attention on recross-examination to inconsistencies in witness Nelson's statements about what he actually saw at the time of the shooting.)

As the trial court specifically noted by its question addressed to counsel at the time the motion to strike was made, there was no showing of prejudice. Other witnesses testified to essentially the same sequence of events, though there was some dispute as to whether Lewis Allen actually threatened Swanigan

with a gun during the encounter on the street. It is the jury's province to resolve any contradictions, conflicts, and inconsistencies in a witness's testimony. *Franklin* v. *State*, 308 Ark. 539, 825 S.W.2d 263 (1992); *Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990).

In short, the trial court did not err in refusing to strike the testimony of witness Nelson for noncompliance with Ark. R. Evid. 615.

### II. Compliance with Supreme Court Rule 4-3(h)

The State, in compliance with Rule 4-3(h) of the Rules of the Arkansas Supreme Court, has searched the record for objections decided adversely to the appellant and has included one pertaining to an objection made by the Deputy Public Defender during the State's closing argument concerning a negative reflection on defense counsel's credibility. Other objections are covered in the appellant's abstract. None involves prejudicial error.

Affirmed.