Clyde McWILLIAMS *v.* Karl W. SCHMIDT, *et al.*

CA 01-222 61 S.W.3d 898

Court of Appeals of Arkansas
Division IV
Opinion delivered December 5, 2001
[Petition for rehearing denied January 9, 2002.]

*Diana M. Maulding*, for appellant.

*Laser Law Firm*, by: *Alfred F. Angulo, Jr.*, for separate appellees Karl Schmidt and Tanas Schmidt.

*Matthews, Sanders & Sayes*, by: *Doralee Idleman Chandler, Clark Brewster, Terry Dugger*, and *Hugh L. Brown*, for separate appellees Ronald Gangluff; Johnny Schmidt; Edward and Margaret Gangluff; David Gangluff; and Wrenetta Ritchie.

L ARRY D. VAUGHT, Judge. This is an appeal from a jury verdict entered in a case involving a boundary dispute. Appellant Clyde McWilliams also appeals from the entry of summary judgment for appellees in his malicious-prosecution claim. We affirm.

*Procedural History*

At issue is the ownership of approximately 5.9 acres of land. Appellant received a deed in 1965 to land in the southwest quarter of Section 12, Township 3 North, Range 12 West, in Pulaski County, Arkansas. To the east of his land, in the southeast quarter,

lies property owned by the Gangluff and Schmidt families. The tracts owned by appellees Margaret Gangluff, Ronald Gangluff, and David Gangluff are north of the tracts owned by appellees Johnny Schmidt, Karl Schmidt, and Tanas Schmidt. In 1998, appellees Karl and Tanas Schmidt received a deed to a tract from Wrenetta Schmidt Ritchie and Jerry Ritchie. In 1995, appellee Edward Gangluff conveyed his interest in a tract to his wife, Margaret, to whom he gave a life estate, and to Ronald and David Gangluff, to whom he gave the remainder. According to the parties' deeds, their common boundary line divides the quarter-sections. Appellant claims that the quarter-section line should be located further east, along a meandering old fence line that was built in approximately 1941 and that was extended south in 1958. Appellees argue that the entire fence line was built to prevent cattle from roaming into the eastern area of their property and was never intended to mark the boundary line between the quarter-sections. Although appellant ran cattle and cut hay on the disputed area, appellees maintain that appellant did so with their permission. Appellees also contend that all parties had agreed that, when the need for a survey arose, a fence would be placed on the actual boundary line.

In 1998, appellees commissioned a survey that placed the boundary line considerably west of the old fence. Based on this survey, appellees built a new fence to demarcate the line dividing the southeast quarter from the southwest quarter of Section 12. After appellees built the new fence, appellant sued them in Pulaski County Circuit Court for ejectment, slander of title, and trespass. Appellees then initiated a quiet-title action in Pulaski County Chancery Court, which was dismissed because of the pendency of this action. After the chancery action was dismissed, appellant amended his complaint to include the claim of malicious prosecution. Appellant's claims were bifurcated, and the malicious-prosecution claim was not tried to the jury with the other claims.

Although appellant claimed title to the disputed area by adverse possession, acquiescence, and an agreed boundary line, he testified without qualification that he claimed title only through his 1965 deed, which clearly conveyed land in the southwest quarter-section. Appellant admitted that, if the land in dispute is actually located within the southeast quarter-section, he does not claim it. Therefore, the central question at trial was whether the area in dispute lies within the southwest quarter or the southeast quarter of Section 12. Nevertheless, the jury was instructed on adverse possession, acquiescence, and boundary by agreement. In rendering their verdict for

appellees, the jury specifically found that appellant does not own the area in dispute.

Appellant filed motions for directed verdict, judgment notwithstanding the verdict, and for new trial, all of which were denied. Appellees moved for summary judgment on the malicious-prosecution claim. In support of their motion, appellees filed affidavits indicating that they had relied upon the advice of counsel in filing the quiet-title action. The trial judge granted summary judgment to appellees on this claim. Appellant appeals from the trial judge's refusal to set aside the jury verdict and from the entry of summary judgment for appellees.

■ Appellant argues that the trial judge should have granted his motions for new trial, directed verdict, and judgment notwithstanding the verdict. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Sparks Reg'l Med. Ctr. v. Smith*, 63 Ark. App. 131, 976 S.W.2d 396 (1998). When reviewing the denial of a motion for directed verdict, we affirm if the jury's verdict is supported by substantial evidence. *Wal-Mart Stores, Inc. v. Binns*, 341 Ark. 157, 15 S.W.3d 320 (2000); *Wal-Mart Stores, Inc. v. Williams*, 71 Ark. App. 211, 29 S.W.3d 754 (2000). The same standard applies when we review the denial of a motion for judgment notwithstanding the verdict. *Home Mut. Fire Ins. Co. v. Jones*, 63 Ark. App. 221, 977 S.W.2d 12 (1998). Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another, forcing or inducing the mind to pass beyond suspicion or conjecture. *Id.* On appeal, only the evidence favorable to the appellee, and all reasonable inferences therefrom, will be considered. *Id.* In reviewing the evidence, the weight and value to be given the testimony of the witnesses is a matter within the exclusive province of the jury. *Rathbun v. Ward*, 315 Ark. 264, 866 S.W.2d 403 (1993). The appellate court does not try issues of fact. *City of Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481 (2000).

■ We will not reverse the denial of a motion for new trial if the verdict is supported by substantial evidence, giving the jury verdict the benefit of all reasonable inferences permissible under the proof. *St. Louis S.W. Ry. Co. v. Grider*, 321 Ark. 84, 900 S.W.2d 530 (1995). In determining whether the evidence is substantial, the court need only consider the evidence on behalf of the appellee and that part of the evidence that is most favorable to the appellee. *Dixon Ticonderoga Co. v. Winburn Tile Mfg. Co.*, 324 Ark. 266, 920 S.W.2d 829 (1996).

Appellant attempted to prove that his deed included the land in dispute and, in the alternative, that he acquired it through an agreement as to the boundary, by acquiescence, or by adverse possession. Appellant argues that the jury's finding that he does not own the disputed property is not supported by substantial evidence.

## Acquiescence

As we stated in *Summers v. Dietsch,* 41 Ark. App. 52, 849 S.W.2d 3 (1993), boundaries are frequently found to exist at locations other than those shown by an accurate survey of the premises in question and may be affected by the concepts of acquiescence and adverse possession. A fence, by acquiescence, may become the accepted boundary even though it is contrary to the surveyed line. *Id.* When adjoining landowners silently acquiesce for many years in the location of a fence as the visible evidence of the division line and thus apparently consent to that line, the fence line becomes the boundary by acquiescence. *Id.* It is not required that there be an express agreement to treat a fence as a dividing line; such an agreement may be inferred by the actions of the parties. *Id.* Acquiescence need not occur over a specific length of time, although it must be for a long period of time. *Lammey v. Eckel,* 62 Ark. App. 208, 970 S.W.2d 307 (1998). A boundary line may be established by acquiescence whether or not it has been preceded by a dispute or uncertainty as to the boundary line. *Jennings v. Burford,* 60 Ark. App. 27, 958 S.W.2d 12 (1997). When a boundary line by acquiescence can be inferred from other facts presented in a particular case, a fence line, whatever its condition or location, is merely the visible means by which the acquiesced boundary line is located. *Id.* Whether a boundary line by acquiescence exists is to be determined upon the evidence in each individual case. *Hedger Bros. Cement and Materials, Inc. v. Stump,* 69 Ark. App. 219, 10 S.W.3d 926 (2000).

## Boundary-Line Agreement

For there to be a valid boundary-line agreement, certain factors must be present: (1) there must be an uncertainty or dispute about the boundary line; (2) the agreement must be between the adjoining landowners; (3) the line fixed by the agreement must be definite and certain; (4) there must be possession following the agreement. *Fields v. Griffen,* 60 Ark. App. 186, 959 S.W.2d 759 (1998).

*Adverse Possession*

In order to establish title by adverse possession, appellant had the burden of proving that he had been in possession of the property in question continuously for more than seven years and that the possession was visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Anderson v. Holliday*, 65 Ark. App. 165, 986 S.W.2d 165 (1999). Whether possession is adverse to the true owner is a question of fact. *Id.* Where possession of property is by permission, title is not acquired by adverse possession. *McCulloch v. McCulloch*, 213 Ark. 1004, 214 S.W.2d 209 (1948). Where the original entry on another's land was amicable or permissive, possession presumptively continues as it began, in the absence of an explicit disclaimer. *Terral v. Brooks*, 194 Ark. 311, 108 S.W.2d 489 (1937).

*The Testimony*

At trial, appellant testified that he and Otto Schmidt, one of appellees' predecessors in title, agreed in 1965 that the old fence line was the boundary. He said that, over the years since that time, he had bush-hogged the land in dispute, used it as pasture land, and planted grass there without asking anyone's permission to do so. However, appellant emphatically stated that he believed the land in dispute to be in the southwest quarter of Section 12 and denied having any claim to land in the southeast quarter.

Appellees did not dispute appellant's use of the land. Nevertheless, they presented testimony demonstrating that he used it with their permission. Appellee Edward Gangluff testified that he had permitted appellant to graze cattle on the land and to cut hay there. He said that, on four or five occasions, appellant had acknowledged the need to eventually move the fence to the true boundary line. He also stated that he had used the old fence to contain cattle and that he had never considered it as the boundary line. Appellee Johnny Schmidt testified that his father, Otto Herman Schmidt (Otto Schmidt's son), had shown him the true boundary west of the old fence line. He said that, when he was eleven years old (he was sixty-three at the time of trial), the ends of the actual boundary line were marked by an old buggy axle and a steel pin. Appellee Margaret Gangluff testified that a steel pipe has marked the boundary since at least 1956, when she married into the family. She also stated that the old fence had been used to control cattle and that she had

never considered it to be the actual boundary line. Appellee Karl Schmidt also testified that the old fence line had not been accepted as the boundary. Appellee David Gangluff stated that he had heard appellant acknowledge that the old fence was not on the true boundary line and that it would need to be straightened out some-day with a survey.

 Based on this testimony, there was more than substantial evidence for the jury to find that appellant failed to establish adverse possession, acquiescence, or a boundary by agreement.

## Title By Deed

 The parties relied on their deeds to establish their rights in the disputed land. The location of a boundary line is a question of fact. *Ward v. Adams,* 66 Ark. App. 208, 989 S.W.2d 550 (1999); *Lammey v. Eckel, supra.* A trial court may not substitute its own view of the evidence for that of the jury. *Schrader v. Bell,* 301 Ark. 38, 781 S.W.2d 466 (1989). The jury is the sole judge of the credibility of the witnesses and the weight and value of their evidence and may believe or disbelieve the testimony of any one or all of the witnesses, even though such evidence is uncontradicted or unimpeached. *Kempner v. Schulte,* 318 Ark. 433, 885 S.W.2d 892 (1994); *Morton v. American Med. Int'l, Inc.,* 286 Ark. 88, 689 S.W.2d 535 (1985). The jury is free to assess a party's credibility and to determine whether or not to believe him or her. *State Auto Prop. and Cas. Ins. Co. v. Swaim,* 338 Ark. 49, 991 S.W.2d 555 (1999).

Both sides presented expert testimony to support their claims. As discussed above, appellant admitted that he did not claim any land in the southeast quarter of Section 12. Appellant offered the testimony of Steve Beadle, a surveyor, who testified that the Government Land Office (GLO) had completed the original survey of this section in 1818. He said that the old fence line is close to where the quarter-section line would be if the GLO measurements are followed and that the boundary line claimed by appellees is not accurate. According to Mr. Beadle, the quarter-section line lies approximately sixty-eight feet east of where appellees' experts have located it. He said that, according to the GLO's measurements, the disputed area lies within the southwest quarter of the section, in the land owned by appellant.

Appellees offered the expert testimony of James Bagwell, a surveyor, and John Pownall, a civil engineer and surveyor. They

stated that Mr. Bagwell performed a survey and, based on the information he provided, Mr. Pownall determined the boundary lines. They stated that the land in dispute is within the southeast quarter-section and agreed that appellant does not own it.

Appellant attacks the reliability of Mr. Bagwell's and Mr. Pownall's testimony and asserts that they did not follow the GLO's measurements. However, both men testified that they had consulted the GLO measurements and had found them to be less than accurate and reliable. It is true that the original United States Government survey is *prima facie* correct and that surveys must conform as nearly as possible with the original survey. *Dicus v. Allen*, 2 Ark. App. 204, 619 S.W.2d 306 (1981). Nevertheless, the weight and effect of the original survey is a question of fact. *See Horne v. Howe Lumber Co.*, 209 Ark. 202, 190 S.W.2d 7 (1945). The supreme court has recognized that errors could have been made in an original government survey. *See Missouri Pac. R.R. Co. v. State*, 197 Ark. 1111, 127 S.W.2d 133 (1939).

Obviously, the jury did not believe Mr. Beadle's testimony that the disputed land lies within the southwest quarter-section, nor was it required to do so. *Gibson Appliance Co. v. Nationwide Ins. Co.*, 341 Ark. 536, 20 S.W.3d 285 (2000). The jury's finding that appellant does not own the disputed land is supported by substantial evidence. Accordingly, the trial judge did not err in refusing to set the verdict aside.

### Purported Irregularities at Trial

Appellant also argues that he is entitled to a new trial because of irregularities that occurred at trial. *See* Ark. R. Civ. P. 59(a)(1). A decision on whether to grant or deny a motion for new trial lies within the sound discretion of the trial judge. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). We will not reverse a trial judge's order denying a new trial unless there is a manifest abuse of discretion, that is, discretion exercised thoughtlessly and without due consideration. *Montgomery Ward & Co. v. Anderson*, 334 Ark. 561, 976 S.W.2d 382 (1998).

Appellant contends that the trial judge unfairly prejudiced the jury by commenting that he might need to reduce an exhibit in size for the supreme court. We do not agree. Obviously, the reduction of the exhibit for the record on appeal would benefit all parties, regardless of who appeals. We see no prejudice in the trial judge's

remarks. Further, appellant did not raise an objection about the remarks at trial. A judge's allegedly biased or harsh remarks are not subject to appellate review if the appellant failed to object to those statements or move for the judge's recusal. *Dodson v. Allstate Ins. Co., supra.* This is true even if the matter was raised in a motion for new trial. *Id.*

### *Arkansas Rule of Evidence 615*

Appellant also argues that the trial judge should not have limited his cross-examination of Mr. Bagwell about his admission that he had, during a break in the trial, discussed Mr. Beadle's testimony with one of appellees' attorneys. Arkansas Rule of Evidence 615 governs the exclusion of witnesses from the courtroom so that they may not hear the testimony of other witnesses. *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996). This rule is a valuable tool for discouraging and exposing fabrication, inaccuracy, and collusion and is a means of insuring that a witness's testimony will not be influenced by the testimony of other witnesses. *Bayless v. State*, 326 Ark. 869, 935 S.W.2d 534 (1996). There is a line that exists between perfectly acceptable witness preparation on the one hand and impermissible influencing of the witness on the other hand. *Id.* Trial lawyers, in the course of preparing their witnesses, must not indicate *specifically* what other witnesses have testified. *Id.* However, attorneys are entitled to talk with witnesses before placing them upon the witness stand and to indicate the general nature of prior witnesses' testimony. *Id.* Whether an attorney violates Rule 615 in the course of preparing a witness must be determined on a case-by-case basis. *Id.*

The three possible methods of enforcement available to the trial judge when a violation of the sequestration rule has occurred are: (1) citing the witness for contempt; (2) permitting comment on the witness's noncompliance in order to reflect on her credibility; (3) refusing to allow her to testify. *Lowe v. Ralph*, 61 Ark. App. 231, 966 S.W.2d 283 (1998). A violation of the witness-exclusion rule is a matter that goes primarily to credibility — not competency. *Martin v. State*, 22 Ark. App. 126, 736 S.W.2d 287 (1987). Even if there has been a clear violation of Rule 615, the trial judge does not abuse his discretion in permitting the witness's testimony when exercising his option of allowing comment on the witness's violation in order to reflect on his credibility. *Swanigan v. State*, 316 Ark. 16, 870 S.W.2d 712 (1994). Indeed, the trial judge's

discretion is more readily abused by excluding the testimony than by admitting it. *Id.*

⬛ The record discloses that the trial judge permitted appellant's attorney to comment extensively on this alleged violation of Rule 615. Therefore, even if appellees' counsel violated the rule, the error was cured and provides no basis for a new trial. Error is no longer presumed to be prejudicial; unless the appellant demonstrates prejudice, we will not reverse. *Lucas v. Grant,* 61 Ark. App. 29, 962 S.W.2d 388 (1998); *Jones v. Balentine,* 44 Ark. App. 62, 866 S.W.2d 829 (1993).

### Malicious Prosecution

⬛⬛ Appellant also contends that the trial judge erred in granting summary judgment to appellees on his malicious-prosecution claim. In summary-judgment cases, we need only decide if the granting of summary judgment was appropriate based upon whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Inge v. Walker,* 70 Ark. App. 114, 15 S.W.3d 348 (2000). Summary judgment is no longer considered a drastic remedy but is regarded simply as one of the tools in the trial court's efficiency arsenal. *See Wallace v. Broyles,* 332 Ark. 189, 961 S.W.2d 712 (1998). All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Inge v. Walker, supra.* On a summary-judgment motion, once the moving party establishes a *prima facie* entitlement to summary judgment by affidavits or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Welch Foods, Inc. v. Chicago Title Ins. Co.,* 341 Ark. 515, 17 S.W.3d 467 (2000).

⬛⬛ An allegedly malicious prosecution can be a civil proceeding. *Carmical v. McAfee,* 68 Ark. App. 313, 7 S.W.3d 350 (1999). The essential elements of malicious prosecution are: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; (5) damages. *McLaughlin v. Cox,* 324 Ark. 361, 922 S.W.2d 327 (1996). Where the defendant makes a full, fair, and truthful disclosure of all the facts known to him before competent counsel and then acts bona fide upon such advice, this

will be a complete defense to a claim of malicious prosecution. *Id.*; *Machen Ford-Lincoln-Mercury, Inc. v. Michaelis*, 284 Ark. 255, 681 S.W.2d 326 (1984).

■■ In *Carmical v. McAfee, supra*, we explained that whether probable cause was lacking may be decided by way of summary judgment:

> Proof of absence of probable cause is an essential element in a claim for malicious prosecution. *Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox, supra; Smith v. Anderson*, 259 Ark. 310, 532 S.W.2d 745 (1976). . . . In the context of malicious prosecution, probable cause means such a state of facts or credible information which would induce an ordinarily cautious person to believe that his lawsuit would be successful. *See McLaughlin v. Cox, supra; Harmon v. Carco Carriage Corp.*, 320 Ark. 322, 895 S.W.2d 938 (1995). . . . In order to have a probable-cause basis to file a lawsuit, a person need only have the opinion that the chances are good that a court will decide the suit in his favor. RESTATEMENT (SECOND) OF TORTS § 675 comment (f) at 460 (1977). The question is not whether the person is correct in believing that his complaint is meritorious, but whether his opinion that his complaint is meritorious was a reasonable opinion. *Id.* A person need have only a reasonable opinion that his complaint is meritorious because, "[t]o hold that the person initiating civil proceedings is liable unless the claim proves to be valid would throw an undesirable burden upon those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions." *Id.* A person's refusal to believe an improbable explanation from someone that he subsequently sues does not amount to substantial evidence that he lacked probable cause to file the lawsuit. *See Kroger Co. v. Standard*, 283 Ark. 44, 670 S.W.2d 803 (1984). The issue of lack of probable cause in a malicious-prosecution case may be decided as a matter of law on summary judgment only if both the facts relied upon to create probable cause and the reasonable inferences to be drawn from the facts are undisputed. *Harmon v. Carco Carriage Corp., supra; Cox v. McLaughlin*, 315 Ark. 338, 867 S.W.2d 460 (1993).

68 Ark. App. at 321-22, 7 S.W.3d at 356-57.

In his affidavit in support of the motion for summary judgment, attorney Hugh Brown stated:

1. That Karl W. Schmidt, Tanas N. Schmidt, Johnny Melvin Schmidt, Edward Bass Gangluff, Margaret Hodge Gangluff, David S. Gangluff, Ronald Gangluff, Wrenetta Sue Schmidt Ritchie, Jerry Ritchie retained my services to defend the above styled Circuit Court action.

2. That my clients disclosed to me all pertinent facts and papers, including deeds and surveys, regarding ownership of the disputed property. The information disclosed was essentially identical to the information that was testified to or introduced at the trial on allegations of ejectment, trespass and slander of title.

3. That based upon the information disclosed during my meetings with my clients I advised that a Petition to Quiet Title and for Injunction in the Chancery Court of Pulaski County should be filed.

4. That I filed said Petition to Quiet Title and for Injunction on behalf of Karl W. Schmidt, Tanas N. Schmidt, Johnny Melvin Schmidt, Edward Gangluff, Margaret Gangluff, David Gangluff and Ronald Gangluff.

Additionally, appellee Ronald E. Gangluff stated in his affidavit:

1. That Karl W. Schmidt, Tanas N. Schmidt, Johnny Melvin Schmidt, Edward Bass Gangluff, Margaret Hodge Gangluff, David S. Gangluff, Wrenetta Sue Schmidt Ritchie, Jerry Ritchie and myself retained Hugh Brown to defend in the above styled Circuit Court action.

2. That all pertinent facts and papers, including deeds and surveys, regarding ownership of the disputed property were disclosed to High [sic] Brown. The information disclosed was the same information that was testified to or introduced at the trial on allegations of ejectment, trespass and slander of title.

3. That based upon the information disclosed to Hugh Brown, he advised that a Petition to Quiet Title and for Injunction in the Chancery Court of Pulaski County should be filed.

4. That said Petition to Quiet Title and for Injunction was filed on behalf of Karl W. Schmidt, Tanas N. Schmidt, Johnny Melvin Schmidt, Edward Gangluff, Margaret Gangluff, David Gangluff and myself by Hugh Brown, attorney of record.

5. That at all times I maintained a belief that the Petition to Quiet Title was meritorious.

6. That the Chancery Court action was filed upon the advise [sic] of my personal counsel.

The other appellees filed affidavits to the same effect.

Appellant argues that the trial judge erred in granting summary judgment to appellees before they answered appellant's interrogatories regarding the malicious-prosecution claim. Rule 56(f) provides that, when a party opposing the motion demonstrates by affidavit that he cannot present facts essential to justify his opposition, the court may refuse the application for summary judgment or order a continuance to permit further discovery. However, the decision on whether to grant a continuance is a matter of discretion with the trial judge. See Jenkins v. International Paper Co., 318 Ark. 663, 887 S.W.2d 300 (1994). If the appellant cannot demonstrate how additional discovery would have changed the outcome of the case, we cannot say that the trial judge abused his discretion. Id.

There is no question that appellant failed to rebut appellees' proof with proof. Further, appellant has not demonstrated how additional discovery would have altered the outcome of this claim. Given appellant's lack of diligence in seeking this discovery, we cannot say that the trial judge abused his discretion in refusing to delay his decision on the motion for summary judgment.

Affirmed.

HART and BAKER, JJ., agree.